```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
```

|                                    |   |                          |
|------------------------------------|---|--------------------------|
| JACK MCRAE,                        | ) |                          |
|      Petitioner,                   | ) |                          |
|             v.                     | ) | Case No. 09-cv-11597-PBS |
| JEFFREY GRONDOLSKY,                | ) |                          |
| Warden FMC Devens, and             | ) |                          |
| THE FEDERAL BUREAU OF PRISONS,     | ) |                          |
| Respondents.                       | ) |                          |

## **MEMORANDUM AND ORDER**

March 9, 2011

Saris, U.S.D.J.

### **I. Introduction**

Seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, petitioner contends that the respondents arbitrarily authorized the recission of 380 days of credit the petitioner earned towards the completion of his original sentence. (Doc. #1.) The case was referred to a Magistrate Judge, and the parties filed cross motions for judgment as a matter of law. (Doc.'s ## 8, 12.) On September 10, 2010 the court issued a lengthy and thoughtful Report and Recommendation finding that it had jurisdiction to consider the petition but otherwise allowing

1

the respondents' motion. (Doc. # 24.)  The Court assumes familiarity with this opinion.  After the issuance of the Report and Recommendation, the petitioner filed objections with this Court.  The Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**.

## II. Background

**A) Sentence and Adam Walsh Act Detention**[1]

In 1986, the petitioner was sentenced in Washington D.C. to 6-20 years in prison for rape while armed.  He was released in 1995 and initially supervised under the Washington D.C. parole system.  Between 1995 and 2006 he was re-incarcerated on two different occasions for technical violations of his parole.  During this period, Congress closed the D.C. prison and mandated that all existing and future D.C. felons be designated to other federal prisons.  The same legislation gave the U.S. Parole Commission (USPC) the authority to grant, deny, and revoke the parole of District of Columbia felons. See  D.C. Code § 24-101.

On March 22, 2006, the USPC revoked Mr. McRae's parole due to his consumption of alcohol and failure to submit to drug testing in violation of the conditions of his parole.  He was ordered to remain incarcerated for a 12 month term.  On March 21, 2007 – two days before the petitioner's presumptive release – the

---

[1] The following background is derived in large part from the Report and Recommendation at 4-20.

Department of Justice certified him as a sexually dangerous person under the Adam Walsh Act. On March 22, 2007 he was issued a certificate of parole by the USPC, but, pursuant to the Adam Walsh Act, he remained in federal prison as a "Pre-Trial inmate who is waiting to see a judge." On April 3, 2008, the U.S. Attorney dismissed the petitioner's case prior to a trial to determine his sexual dangerousness, and the petitioner was released.

On December 11, 2008, the USPC once again arrested the petitioner for violations of the terms of his parole. When he returned to prison, the USPC and BOP did not give him sentence credit for the 380 days in jail that he had spent awaiting a hearing under the Adam Walsh Act. On February 10, 2010 the petitioner was again released, to remain under supervision until December 14, 2010. On July 7, 2010 the USPC issued a warrant charging the petitioner with violating the conditions of supervision by failing to comply with the requirement that he register as a sex offender and failing to report. The petitioner was re-arrested on November 16, 2010. On February 9, 2011, the USPC held a parole revocation hearing at the end of which the USPC Hearing Examiner recommended that the petitioner's parole be revoked, that he remain incarcerated, and that he receive no credit towards his sentence for the time between his February 10, 2010 release from FMC Devens and his November arrest. The

Hearing Examiner projected that the full term date for the petitioner's 1984 District of Columbia armed rape sentence will now fall on or about July 30, 2011. (See Second Gervasoni Decl. at ¶¶ 2(a)-2(e); Pet. Response (Doc. # 33) at 2.)

**B) Magistrate Judge's Report and Recommendation**

The Report and Recommendation first considered whether the petitioner had exhausted administrative remedies within the BOP, creating jurisdiction to consider the § 2241 petition. Report and Recommendation at 13. Despite the petitioner's failure to follow the BOP's administrative review process to the letter, the Magistrate Judge found that the interests of the petitioner weighed against requiring strict compliance and, therefore, that the court had jurisdiction to consider the petition. See Id. at 18(citing McCarthy v. Madigan, 503 U.S. 140 (1992)).

Regarding the merits of the petition, the Report and Recommendation first examined the petitioner's contention that the USPC and BOP's decision not to give sentence credit for time spent in custody under the Adam Walsh Act was in contravention of District of Columbia Law. See Report and Recommendation at 18-31; Davis v. Moore, 772 A.2d 204, 210 (D.C. 2001)(USPC "supervises parole of D.C. offenders housed at federal facilities" and "must apply D.C. (rather than federal) parole to these inmates."). Washington D.C.'s Good Times Credit Act (GTCA), applying to District of Columbia Code offenders, provides: "Every person

4

shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody, or on parole in accordance with § 24-406, as a result of the offense for which the sentence was imposed." D.C. Code § 24-221.03(a). Simultaneously, however, District of Columbia law also provides that, "If the order of parole shall be revoked. . . [t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." D.C. Code § 24-406(a).

These provisions are potentially contradictory, as § 24-221.03(a) seems to demand that all time on parole be counted toward completion of the sentence, whereas § 24-406(a) prevents time on parole from being taken into account if that parole is revoked. In <u>United States Parole Comm'n v. Noble</u>, 693 A.2d 1084, 1105 (D.C. 1997), the District of Columbia Court of Appeals, resolved any contradiction by finding that time on parole counts toward completion of a sentence only if that parole is not revoked. <u>See</u> <u>id.</u> Once a prisoner's parole is revoked, however, under D.C. Code § 24-406(a), he loses credit for time spent on parole prior to the revocation. <u>Id.</u> at 1094; <u>see</u> <u>also</u> <u>United States Parole Comm'n v. Noble</u>, 711 A.2d 85 (D.C. 1998)(en banc)(adopting the panel's opinion in <u>Noble</u>). Thus, if the time the petitioner spent in prison certified as a sexually dangerous person awaiting trial was time spent in custody as opposed to on

5

parole, he should have been credited this time.  If, however, this was time on parole, then it does not count toward his sentence because his parole was ultimately revoked.

As the Report and Recommendation explained, the GTCA does not define the term parole, but regulations promulgated by the USPC, the agency charged with administering this statutory scheme provide, "A grant of parole becomes operative upon the authorized delivery of a certificate of parole to the prisoner, and the signing of the certificate by the prisoner, who thereafter becomes a parolee." See 28 CFR § 2.86(e).  Further, 28 CFR § 2.105(d), notes that a "parolee whose parole is revoked by the [USPC] shall receive no credit toward his sentence for time spent on parole, including any time the parolee may have spent in confinement on other sentences." Id.  The Report and Recommendation concluded that, read together, these regulations supported the decision not to issue sentence credit for the petitioner's time spent in custody awaiting a hearing on sexual dangerousness under the Adam Walsh Act, for even though he remained in BOP custody, he was held on a different matter and had received and signed a certificate of parole. See Report and Recommendation at 30-31.

The petitioner argued that these regulations were in conflict with the language of the GTCA.  Because of the deference given to agencies to fill in the gaps of statutes they

administer, the Report and Recommendation analyzed the regulations under the two-part test explicated in Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). The Magistrate Judge found, first, that the word "parole" does not have a plain meaning that excludes the USPC's interpretation. Report and Recommendation at 25-26. She noted that while the term "parole" normally involves a release from all confinement, "[n]ot all individuals who are granted parole are permitted to return to the community or to the street." Id. at 26. The petitioner acknowledged that a prisoner can still be on parole when he is released into the custody of state or immigration authorities but argued that "parole" denotes a release from "immediate physical imprisonment" and suggested that this definition covers situations where a prisoner is released from the custody of one authority and into the custody of another but not situations where the actual custodian – in this case BOP – remains the same. The Report and Recommendation agreed that this may be one reasonable interpretation of the statutory term, but it is certainly not the "plain and unambiguous" interpretation. See Neang Chea Taing v. Napolitano, 567 F.3d 19, 23 (1st Cir. 2009)(internal quotation marks and citations omitted).

The Report and Recommendation also found that the USPC's interpretation was reasonable. See Report and Recommendation at 30 (citing Chevron, 467 U.S. at 843). Particularly when

7

considered alongside 28 CFR § 2.105(d), which provides that parole may include "time the parolee may have spent in confinement on other sentences," a rule specifying that parole begins upon the issuance of a certificate of parole is reasonable "inasmuch as it recognizes the fact that not all parolees are released to the community or to the street upon the grant of parole." See Report and Recommendation at 30.

Next, the Report and Recommendation considered the petitioner's argument that 18 U.S.C. § 3568 mandates that the time he served awaiting a hearing on his sexual dangerousness be counted toward the sentence for his 1984 plea. That statutory section, which has been repealed but applies to the petitioner because he was originally sentenced between 1966 and 1987, provides, "The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed." Id.

The Report and Recommendation concluded that the statute did not apply to the time the petitioner spent in custody awaiting a hearing because that time "does not qualify as time 'in custody in connection with the offense or acts for which the sentence was imposed.'" Report and Recommendation at 32. The court found support for this conclusion in Kansas v. Hendricks, 521 U.S. 346 (1997), in which the Supreme Court concluded that a Kansas law

allowing for the civil commitment of sexually dangerous people did not raise double jeopardy concerns because it provided for a civil, non-punitive confinement, separate from the criminal sentence served for sexual offenses. Id. at 369-70. Under the Kansas scheme sexual offenses were "used solely for evidentiary purposes. . . to support a finding of future dangerousness." Id. at 362. Similarly, according to the court, "Adam Walsh Act commitment. . . is distinct from the underlying 1984 criminal conviction," and thus does not implicate 18 U.S.C. § 3568 which only covers time spent in custody connection with the criminal offense to which the sentence has been applied. Report and Recommendation at 33-34.

### III. Discussion

The underlying Report and Recommendation is thoughtful and well-reasoned, and it provides a compelling analysis of the validity of the USPC regulations defining parole as commencing upon the issuance and signing of a valid certificate of parole. However, after reviewing the objections, the Court asked the parties to address the distinction the Adam Walsh Act draws between time spent in custody after a Court has determined that a person is sexually dangerous and time spent awaiting this determination upon a certification by the Department of Justice. The BOP and USPC's decision not to grant sentence credit to the defendant for the time he spent in custody after the issuance of

9

the certificate of sexual dangerousness hinged on an extremely close question of law. Upon consideration of the language of the Adam Walsh Act, however, the Court finds that this decision was in error.

Under 18 U.S.C. § 4248(a), the government may initiate a civil commitment proceeding by certifying that a person "in the custody of the Bureau of Prisons" is sexually dangerous. Id. This certification operates "to stay the release of the person pending completion of procedures contained in this section." Id. That is, release is stayed until the completion of the procedures for civil commitment. Under Section 4248(d), if "after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4248(d). The statute makes plain, thus, that civil commitment does not begin until after a disposition that the person in custody is sexually dangerous. Until that time, the individual remains in the custody of the BOP, with his release stayed pending a final determination.

This reading finds support in recent decisions considering whether inmates who receive certificates of sexual dangerousness under the Adam Walsh Act can be on supervised release while awaiting a civil commitment hearing. In U.S. v. Bolander, No. 01-2684, 2010 WL 5342202, at * 4 (S.D. Cal. Dec. 21, 2010), the

court found that, per 18 U.S.C. § 4248(a), the prisoner remained imprisoned on his underlying sentence while awaiting a hearing on sexual dangerousness, and thus, because the "term of supervised release commences on the day the person is <u>released</u> from imprisonment," 18.U.S.C. § 3624(e), he could not have been on supervised release during that period. <u>See</u> <u>Bolander</u>, 2010 WL 5342202, at * 2. <u>See also</u>, <u>U.S. v. Broncheau</u>, No. 5:06-HC-2219-BO, 2010 WL 448635, at * 7 (E.D.N.C. Oct. 29, 2010)(noting that certification had "stay[ed] the commencement of respondents' court-ordered terms of supervised release.").

This reading of the Adam Walsh Act calls for a reexamination of the petitioner's arguments for relief. There is no question that the petitioner received and signed a certificate of parole, and pursuant to 28 CFR § 2.86(e), time spent in BOP custody after the issuance of this certificate should be considered time on parole. However, the fact that the petitioner's release from custody had been stayed pending a determination on sexual dangerousness raises the question of whether the USPC had the jurisdiction to issue the certificate when it did.

Under District of Columbia law the USPC has "jurisdiction. . . to grant and deny parole. . . in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code." D.C. Code § 24-131(a)(1). The Court finds little guidance on what makes a D.C. prisoner "eligible" for

parole in this context, but logically, a prisoner cannot be eligible for parole if he is not eligible for release.  This principle finds support in 18.U.S.C. § 4205(h)(repealed), which applied to USPC authority over federal prisoners and reads "Nothing in this chapter shall be construed to provide that any prisoner shall be eligible for release on parole if such prisoner is ineligible for such release under any other provision of law."  Id.  As his release had been stayed on March 21, 2007, the petitioner was not eligible for parole on March 22, 2007.  Therefore, his certificate of parole was improperly issued.

The respondents argue that if the petitioner disagreed with the issuance of a certificate of parole, he could have refused to sign it, or, even after signing it, he could have abrogated his parole status by suing the USPC directly.  These arguments are also unpersuasive, because the USPC did not have the jurisdiction to issue the certificate of parole to someone whose release was stayed.  Moreover, a waiver of the right to earn credit against a sentence for time spent incarcerated must be knowing and voluntary. Cf. Brady v. U.S., 397 U.S. 742, 748 (1970)("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").  Because the petitioner remained in BOP custody and had not received a valid certificate of parole, the USPC's determination that the prisoner

was on parole during the period of his Adam Walsh Act confinement was in violation of the GTCA. See D.C. Code § 24-406(a). The prisoner properly challenges the USPC's determination in this § 2241 petition because it impacts his continued incarceration at FMC Devens.

Even if the certificate of parole was properly issued, the petitioner puts forth a separate ground for relief in 18 U.S.C. § 3568 (repealed by 18 U.S.C. § 3585(b)(2)). The Report and Recommendation held that this provision did not apply to the petitioner because the time he spent in custody after a certification of sexual dangerousness was not time spent "in connection with the offense or acts for which the sentence was imposed." Report and Recommendation at 31-37. The Report and Recommendation correctly relied on Hendricks to support the notion that civil commitment for sexual dangerousness is non-punitive and grounded on factual predicates different from the acts giving rise to the criminal sentence, even if those acts are among the facts considered in making the decision to commit someone to civil custody. However, the petitioner was never formally civilly committed. Between March 21, 2007, and April 3, 2008, release from his underlying criminal sentence was stayed while he waited for a hearing before a judge who would consider the number of factors that go into a finding of sexual dangerousness. Only "after [such a] hearing, [if] the court

13

finds by clear and convincing evidence that the person is a sexually dangerous person, [can] the <u>court</u>. . . commit the person to the custody of the Attorney General." 18 U.S.C. §4248(d)(emphasis added).  In this way, the time the petitioner spent in custody between March 21, 2007 and April 3, 2008 was time spent in connection with the acts that supported his criminal incarceration.

## ORDER

The Court orders the respondent to give the petitioner sentence credit for the period in custody between March 21, 2007 and April 3, 3008, and to take all actions consistent with this order.

_____
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE